# APPEAL NO. 25-5053

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ERIC F. SCHOLL and JACQUELINE R. SCHOLL, individually and next friends to J.J.S., a minor child; and J.J.S., a minor child,
*Plaintiffs-Appellants,*
—v.—
WALGREENS SPECIALTY PHARMACY, LLC d/b/a ALLIANCERX WALGREENS PRIME and WALGREENS SPECIALTY PHARMACY HOLDINGS, LLC,
*Defendants-Appellees*

On Appeal from the United States District Court
for the Northern District of Oklahoma
The Honorable John D. Russell
District Court Case No. 4:21-cv-363-JDF-MTS

---

**RESPONSE BRIEF OF APPELLEES WALGREENS SPECIALTY PHARMACY, LLC D/B/A ALLIANCE RX WALGREENS PRIME AND WALGREENS SPECIALTY PHARMACY HOLDINGS, LLC**

---

James E. Goldschmidt
Nathan J. Oesch
Ellen E. Anderson
QUARLES & BRADY LLP
411 E. Wisconsin Ave., Ste. 2400
Milwaukee, WI 53202
(414) 277-5000

james.goldschmidt@quarles.com
nathan.oesch@quarles.com
ellen.anderson@quarles.com

Stacy A. Alexejun
QUARLES & BRADY LLP
33 E. Main St., Ste. 900
Madison, WI 53703
(608) 251-5000

stacy.alexejun@quarles.com

*Attorneys for Appellees Walgreens Specialty Pharmacy, LLC
d/b/a AllianceRx Walgreens Prime
and Walgreens Specialty Pharmacy Holdings, LLC*

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................i

TABLE OF AUTHORITIES...................................................................iv

STATEMENT OF RELATED CASES ...................................................vii

JURISDICTIONAL STATEMENT .....................................................viii

CITIZENSHIP STATEMENT ...............................................................ix

STATEMENT OF THE ISSUES...............................................................x

STATEMENT OF THE CASE ..................................................................1

I.      Introduction.................................................................................1

II.     Factual background......................................................................4

    A.      AllianceRx receives J.J.S.'s prescription: May 29, 2020 –
        June 2, 2020. .........................................................................4

    B.      AllianceRx opens (and closes) the request to fill J.J.S.'s
        prescription: June 3, 2020 – June 16, 2020. ..........................6

    C.      Prior authorization is obtained and the prescription is
        filled: June 16, 2020 – July 20, 2020. .................................10

III.    The district court proceedings ...................................................12

    A.      Appellants file suit, alleging a breach of the "duty of
        timeliness."..........................................................................12

    B.      AllianceRx files for summary judgment on the basis that
        the duty Appellants alleged does not exist under
        Oklahoma law and was not voluntarily assumed. ...............13

    C.      The district court held there is no basis for Appellants'
        alleged duty because Oklahoma law does not impose a
        duty to fill a prescription and AllianceRx did not assume
        one, either..............................................................................16

i

SUMMARY OF THE ARGUMENT ........................................................19

ARGUMENT ..........................................................................................21

I.    Standard of review ........................................................................21

II.   The district court correctly held that the sole duty alleged in
      the petition—the duty to timely fill a prescription—does not
      exist under Oklahoma law and AllianceRx did not assume
      such a duty through its actions......................................................22

      A.    The district court properly considered pharmacies'
            alleged duty to fill a prescription in the context of the
            only duty alleged by Appellants: a duty of timeliness. ........23

      B.    There is no duty for a pharmacy to fill a prescription
            under Oklahoma law...........................................................24

            1.    The district court appropriately looked to the
                  Oklahoma Pharmacy Act to determine whether
                  AllianceRx owed Appellants the alleged legal duty. ...24

            2.    The district court correctly applied Oklahoma's
                  legislative framework to find that no duty to fill a
                  prescription exists under Oklahoma law .....................31

            3.    Retroactivity was merely a supporting piece of the
                  district court's analysis, but it was correct in any
                  event. ..........................................................................34

      C.    The district court also correctly decided that AllianceRx
            did not voluntarily assume any duty to J.J.S.......................36

            1.    Appellants misconstrue AllianceRx's conditional
                  argument at the district court as a judicial
                  admission.....................................................................36

            2.    The district court correctly found the record does
                  not show that AllianceRx voluntarily assumed a
                  duty before July 13, 2020.............................................39

III.  Appellants' remaining arguments are irrelevant to the central
      issue before this Court. .................................................................. 42

      A.    The district court's rulings on duty were not *sua sponte*
            in any reversible sense. .......................................................... 42

      B.    The purported disputes of fact that Appellants raise are
            not material because they are not relevant to whether
            AllianceRx owed J.J.S. a legal duty. ..................................... 46

      C.    Appellants' arguments for duties other than the one
            alleged in their complaint are misguided. ............................ 48

CONCLUSION ............................................................................................ 51

STATEMENT REGARDING ORAL ARGUMENT ................................. 51

CERTIFICATE OF COMPLIANCE .......................................................... 53

CERTIFICATE OF SERVICE .................................................................. 55

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adler v. Wal-Mart Stores, Inc.*,
144 F.3d 664 (10th Cir. 1998)..............................................................21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................21–22

*Asarco, LLC v. Noranda Mining, Inc.*,
844 F.3d 1201 (10th Cir. 2017)............................................................38

*Brooks v. Mentor Worldwide, LLC*,
985 F.3d 1272 (10th Cir. 2021)............................................................50

*Carista v. Valuck*,
2016 OK CIV APP 66, 394 P.3d 253.......................................25–29, 49

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................46

*Cherokee Nation v. McKesson Corp.*,
No. CIV-18-056-RAW, 2021 WL 1200093
(E.D. Okla. Mar. 29, 2021) ...............................................................29

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020)...................................................34

*Clifton v. Craig*,
924 F.2d 182 (10th Cir. 1991)............................................................21

*Darnell v. Chrysler Corp.*,
1984 OK 57, 687 P.2d 132 ................................................................31

*DiVincenzo v. Molinaro*,
No. FSTX08CV166028174S, 2022 WL 17102332
(Conn. Super. Ct. Nov. 2, 2022).........................................................42

*Haney v. State*,
1993 OK 41, 850 P.2d 1087.................................................................35

*Harwood v. Ardagh Group*
2022 OK 51, 522 P.3d 473, *as corrected* (Sept. 19, 2022)...............40–41

*Hill v. Kemp*,
478 F.3d 1236 (10th Cir. 2007)............................................................50

*Howell Petroleum Corp. v. Leben Oil Corp.*,
    976 F.2d 614 (10th Cir. 1992)............................................................43

*In re Nat'l Prescription Opiate Litig.*,
    458 F. Supp. 3d 665 (N.D. Ohio 2020)...........................................34

*In re Nat'l Prescription Opiate Litig.*,
    477 F. Supp. 3d 613 (N.D. Ohio 2020)...........................................34

*In re Nat'l Prescription Opiate Litig.*,
    2019 WL 3917575 (N.D. Ohio Aug. 19, 2019) ...............................34

*Jackson v. Oklahoma Mem'l Hosp.*,
    1995 OK 112, 909 P.2d 765 (Okla. 1995) ...............................48–49

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*,
    870 F.2d 563 (10th Cir. 1989).........................................................46

*Kannady v. City of Kiowa*,
    590 F.3d 1161 (10th Cir. 2010).......................................................43

*Kolozsvari v. Doe*,
    943 N.E.2d 823 (Ind. Ct. App. 2011) ..............................................28

*Kovaly v. Wal-Mart Stores Texas, L.L.C.*,
    627 F. App'x 288 (5th Cir. 2015)....................................................30

*Lowery v. Echostar Satellite Corp.*,
    2007 OK 38, 160 P.3d 959 .......................................................24, 46

*McGehee v. Forest Oil Corp.*,
    908 F.3d 619 (10th Cir. 2018).........................................................28

*Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*,
    2010 OK 9, 230 P.3d 869 ................................................................24

*Pharmcare Oklahoma, Inc. v. State Health Care Auth.*,
    2007 OK CIV APP 5, 152 P.3d 267............................................24–29

*Polymer Fabricating, Inc. v. Emps. Workers' Comp. Ass'n*,
    1998 OK 113, 980 P.2d 109.............................................................35

*Richison v. Ernest Grp., Inc.*,
    634 F.3d 1123 (10th Cir. 2011).......................................................38

*Safeway Stores 46 Inc. v. WY Plaza LC*,
    65 F.4th 474 (10th Cir. 2023) .........................................................45

*Scott v. Foster,*
   2023 OK 112, 538 P.3d 1180 ................................................................ 34

*Sparks v. Hicks,*
   1996 OK 20, 912 P.2d 331 ........................................................... 48–49

*Spencer v. Wal-Mart Stores, Inc.,*
   203 F. App'x 193 (10th Cir. 2006) ...................................................... 37

*Timmons v. White,*
   314 F.3d 1229 (10th Cir. 2003) ........................................................... 21

*Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC,*
   2014 OK 106, 341 P.3d 75 ................................................................... 28

*U.S. Energy Corp . v. Nukem, Inc.,*
   400 F.3d 822 (10th Cir. 2005) ............................................................. 38

*Ward v. Utah,*
   398 F.3d 1239 (10th Cir. 2005) ........................................................... 44

*Wasson v. Shoffner,*
   2006 OK CIV APP 151, 149 P.3d 1085 ............................................... 24

*Woffard v. E. State. Hosp.,*
   1990 OK 77, 795 P.2d 516 ................................................................... 28

## Statutes

Okla. Stat. tit. 59, § 353.20.1 .................................................... 16, 31, 49
Okla. Stat. tit. 59, § 353.20.2 ............................................. 17, 31, 48–49
Okla. Stat. tit. 59, § 353 ...................................................................... 16
Okla. Stat. tit. 59, § 354 .............................................................. 17, 31

## Other Authorities

39 Okla. Reg. 2057, OAR Docket #22-613 ........................................... 36
Okla. Admin. Code § 535:10-3-1.1 ............................................... 32, 49
Okla. Admin. Code § 535:10-3-1.2 ............................................. 32–33
Okla. Admin. Code § 535:10-9-2 ......................................................... 13
Okla. Admin. Code § 535:15-3-2 ......................................................... 13
Okla. Admin. Code § 535:15-3-13 .................................... 17, 28, 32–36

## STATEMENT OF RELATED CASES

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

AllianceRx[1] generally concurs with Appellants' jurisdictional statement, but provides further detail for completeness.

Diversity jurisdiction exists as all parties are from different States and the amount in controversy exceeds $75,000. Specifically, Appellants are citizens of Oklahoma. Appellees, as detailed in the Citizenship Statement that follows, are both citizens of Delaware and Illinois.

Appellants filed suit in Tulsa County District Court on July 30, 2021. (R.2-1, Supp. App'x Vol. I at 17–23).[2] Appellees were served on August 5, 2021 (Walgreens Specialty Pharmacy, LLC) (R.2-2, Supp. App'x Vol. I at 24–25), and August 6, 2021 (Walgreens Specialty Pharmacy Holdings, LLC) (R.2-3, Supp. App'x Vol. I at 26–27).

---

[1] Throughout this brief "AllianceRx" collectively refers to both Appellees: Walgreens Specialty Pharmacy, LLC d/b/a AllianceRx Walgreens Prime and Walgreens Specialty Pharmacy Holdings, LLC.

[2] AllianceRx offers the following citation convention pursuant to 10th Cir. R. 28.1(A). Citations are first to the district court's docket number (denoted by R.) and page number, and next to the appropriate appendix volume (A. App'x for Appellants' Appendix and Supp. App'x for Appellees' Supplemental Appendix) and page number, then to any additional identifiers helpful to the Court (e.g., a descriptor, bates number, or deposition page/line numbers). References to Appellants' opening brief before this Court are to the brief's internal pagination.

AllianceRx timely removed the case to the district court on September 3, 2021. (R.2, A. App'x Vol. I at 19–23).

The district court's final judgment against Appellants, resolving all of their claims, was entered March 28, 2025. (R.60, A. App'x Vol. V at 23).

## CITIZENSHIP STATEMENT

Walgreens Specialty Pharmacy, LLC is a Delaware limited liability company, so its citizenship is determined by the citizenship of its members. The sole member of Walgreens Specialty Pharmacy, LLC is Walgreens Specialty Pharmacy Holdings, LLC.

Walgreens Specialty Pharmacy Holdings, LLC is a Delaware limited liability company. Its two members are Walgreen Co. and WBA Acquisition 6, LLC.

Walgreen Co. is a is an Illinois corporation with its principal place of business in Deerfield, Illinois. WBA Acquisition 6, LLC is a Delaware limited liability company. Its sole member is Walgreens Boots Alliance, Inc., a Delaware corporation.

Accordingly, Walgreens Specialty Pharmacy Holdings, LLC is a citizen of Delaware and Illinois, and thus Walgreens Specialty Pharmacy, LLC is also a citizen of Delaware and Illinois.

## STATEMENT OF THE ISSUES

AllianceRx disagrees with Appellants' Statement of the Issues. Appellants list several arguments but fail to accurately present the dispositive issue before this Court. To resolve this appeal, the Court need only decide whether the district court erred in holding that AllianceRx had no duty under Oklahoma law—whether preexisting or voluntarily assumed—to fill J.J.S.'s prescription within a particular time.[3]

While Appellants' opening brief is full of rhetoric about promises, secrecy, and physician-patient relationships, their only *claim* was for negligence, and the only duty they alleged in their petition was a purported duty of "timeliness"—*i.e.*, a pharmacy's alleged duty to fill a prescription in a timely manner. The district court determined that this alleged duty raises two questions: first, whether a pharmacy has a duty to fill a prescription *at all*, and second, whether that duty (if it exists) further includes a duty to do so in a timely manner. The district court correctly held that AllianceRx did not owe a duty to fill the prescription at issue at all, let alone within any particular timeframe.

---

[3] Issues 1, 3, and 4 in Appellants' Statement of the Issues frame this question in three different ways.

Having correctly held that Oklahoma does not impose a preexisting duty on pharmacies to fill a prescription as a matter of law, the district court also examined the record to assess whether AllianceRx had voluntarily assumed a duty to timely fill J.J.S.'s prescription through its actions, concluding that it did not. In the absence of any legal duty, Appellants' negligence claim necessarily fails, so summary judgment in favor of AllianceRx was appropriate.

The district court's two conclusions on *duty* resolve the appeal, so the Court's review should focus on whether they were correct. The remaining issues identified by Appellants—the alleged *sua sponte* nature of the district court's ruling (Appellants' Issue 2) and the purported resolution of disputed material facts against the plaintiffs (Appellants' Issue 5)—are essentially collateral attacks on those conclusions. Neither of those issues changes the correctness of the district court's conclusions regarding legal duty, so the Court should affirm.

## STATEMENT OF THE CASE

## I.     Introduction

This case involves a patient, her parents, her medical provider, her health insurer, and her specialty pharmacy, all of whom played a part in getting specialty medication from the pharmacy to the patient, J.J.S., five years ago. Out of everyone involved in that complex interaction, Appellants' essential claim is that the specialty pharmacy, AllianceRx, should have done more.

What "more" really means in this context is ultimately *not* about providing medication (the very last step in the process), but about all of the intermediate legwork necessary to connect a prescription to available insurance coverage behind the scenes—what pharmacies often refer to as "insurance adjudication." What Appellants really contend is that the legal duty to track down all of the information necessary to insurance adjudication lies not with the patient (or in the case of a minor patient, her parents), nor with the provider, nor with the insurer, but with the pharmacy dispensing the medication. When medication is necessary and that information is not forthcoming, they claim, it is the pharmacy's *duty* to keep on seeking it—for how long, they do not say.

The shorthand that Appellants used for this duty—at least in the district court—was a duty to "timely deliver" medication. Proceeding on that basis, their lawsuit included only one claim: that AllianceRx was negligent based on a supposed duty to fill J.J.S.'s prescription in a timely manner. (R.2-1, Supp. App'x Vol. I at 22–23, Petition at ¶¶ 30–35). On summary judgment, the district court concluded that under Oklahoma law, not only did AllianceRx have no duty to "timely deliver" medication, but it had no duty to fill the prescription at all.

As legal conclusions go, this one is fairly narrow—and demonstrably correct. So on appeal, Appellants resort to overstating the district court's ruling and pivoting to legal theories not presented below.

To clear the air: this lawsuit includes no claims for fraud or misrepresentation. The district court did not rule that "pharmacists may let their patients suffer and die (for any reason or for no reason)" or that "pharmacists should be allowed to injure (and apparently even kill) . . . patients without consequences." (App. Br. at 26; *id.* at 17). This case is *not* about "blanket immunity" or whether "pharmacy conglomerates can immiserate children[.]" (App. Br. at 27; *id.* at 3). No one died here. No one lied here. Nor did Appellants themselves ever allege as much.

Instead, the district court held—narrowly and correctly—that (1) Oklahoma law imposes on pharmacies no preexisting duty to fill a prescription, much less to do so within any particular timeframe, and (2) AllianceRx did not voluntarily undertake any such duty. These conclusions are consistent with Oklahoma regulations that govern pharmacies and Oklahoma common law. If they are affirmed—as they should be—the result will be no different than what Oklahoma law already says.

Moreover, to affirm summary judgment for AllianceRx, the Court need not go as far as the district court did. While the district court was correct to conclude that pharmacies in Oklahoma have no preexisting duty to fill a prescription (period), it suffices to hold that they have no duty to do so "timely" (which is what Appellants actually claimed)—or even more narrowly, that they have no duty to adjudicate insurance on behalf of patients (which is what this claim ultimately means). Each of these holdings would be consistent with Oklahoma law, and all of them support affirming the judgment.

## II. Factual background

### A. AllianceRx receives J.J.S.'s prescription: May 29, 2020 – June 2, 2020.

On May 29, 2020, J.J.S., a minor, was diagnosed with vaginal agenesis, a congenital condition by which she could not expel the uterine lining ordinarily shed during menstruation. (R.41-2, A. App'x Vol. I at 89–91, Operative Report of Dr. Catherine Hildebrand). Dr. Catherine Hildebrand, J.J.S.'s doctor, presented J.J.S. and her parents with three treatment options: (1) a complete hysterectomy; (2) a difficult surgery that would enable J.J.S. to menstruate normally; or (3) Lupron Depot hormone injections that would prevent ovulation. (R.41, A. App'x Vol. I at 58, Defs.' Prop. Facts ¶ 3; R.46, A. App'x Vol. III at 7, Pls.' Resp. to Defs.' Prop. Facts ¶ 1). J.J.S. and her family selected option three. (R.41-3, A. App'x Vol. I at 99–100, Dr. Hildebrand Tr. at 20:12–21:12).

On June 1, Dr. Hildebrand sent a request for AbbVie, the manufacturer of Lupron Depot, to investigate J.J.S.'s health insurance benefits for the medication. (R.41-4, A. App'x Vol. I at 103). As submitted by Dr. Hildebrand, the request called for 11.25 milligrams of the medication, a three-month (90-day) supply. (*Id.*)

4

On June 2, AbbVie sent a benefits summary to Dr. Hildebrand's office. (R.41-4, A. App'x at 104–05). The benefits summary noted that prior authorization was recommended to ensure insurance coverage for the medication, that Dr. Hildebrand as the provider may need to provide clinical information to support the prior authorization, and that the approximate turn-around time for the prior authorization is "7–14 days after initiation with the insurance company, BCBS of Oklahoma." (R.41, A. App'x Vol. I at 59, Defs.' Prop. Facts ¶¶ 2–3; R.46, A. App'x Vol. III at 7, Pls.' Resp. to Defs.' Prop. Facts ¶¶ 1–5; R.41-4, A. App'x Vol. I at 106, Benefit Summary).

The benefits summary also identified AllianceRx[4] as the in-network pharmacy where the prescription could be filled "[p]er the patient's insurance company." (R.41-4, A. App'x Vol. I at 106, Benefit Summary). AbbVie forwarded the prescription to AllianceRx that same day. (*Id.*)

---

[4] Although AllianceRx is owned by the same parent company as Walgreens, AllianceRx is a specialty pharmacy, not a retail pharmacy that a customer "can just walk into on the street." (R.46-1, A. App'x Vol. III at 34, Carrington Tr. at 13:14–14:4). Specialty pharmacies "deal with specialty medications, medications that you can't get at your local Walgreens." (*Id.* at 12:23–13:6). AllianceRx fills prescriptions that "have to be administered by a doctor rather than a patient," or "that have to be handled . . . or stored in a particular way." (*Id.* at 13:7–14:4).

## B.    AllianceRx opens (and closes) the request to fill J.J.S.'s prescription: June 3, 2020 – June 16, 2020.

Dr. Hildebrand verified the prescription with AllianceRx the day after AllianceRx received it: June 3, 2020. (R.41-9, A. App'x Vol. I at 180 at WALGREENS00002). Between June 3 and June 11, AllianceRx investigated J.J.S.'s benefits with BCBS of Oklahoma.

First, on June 3, AllianceRx ran a test claim on the prescription, which BCBS of Oklahoma rejected outright because the prescription called for a 90-day rather than a 30-day supply. (R.41-9, A. App'x. Vol. I at 181, WALGREENS00003; *see also* R. 41-5, A. App'x Vol. I at 137–38, Cirrincione Dep. Tr. at 79:20–80:7). On June 4, AllianceRx re-ran the test prescription with a 30-day supply. (R.41-9, A. App'x. Vol. I at 190, WALGREENS00012). AllianceRx re-submitted the revised supply to AllianceRx's benefits investigation department thereafter. (R.41-5, A. App'x Vol. I at 138, Cirrincione Dep. Tr. at 80:1–7). On June 9, AllianceRx's benefits investigation department confirmed that J.J.S.'s pharmacy benefits would not cover the prescription, making it necessary to verify whether it could be covered under J.J.S.'s major medical benefits instead. (R.41-9, A. App'x Vol. I at 191, WALGREENS00013).

6

The district court found that AllianceRx first confirmed the need for preauthorization on Thursday, June 11, 2020—and that "only Dr. Hildebrand could initiate the preauthorization process." (R.58, A. App'x Vol. V at 5–6 (hereinafter "Decision")). The district court further found that AllianceRx began seeking the necessary prior authorization the very same day. On these particular points, the district court observed that "the evidence cited by the Scholls does not establish a genuine dispute." (*Id.* at 3 n.5). Nor do Appellants identify any in their opening brief.

AllianceRx first attempted to obtain Dr. Hildebrand's assistance with preauthorization on Thursday, June 11, when it faxed a request form to her office. (R.41-9, A. App'x. Vol. I at 181, WALGREENS00003; R.41-13, A. App'x Vol. II at 3). The form informed Dr. Hildebrand that BCBS of Oklahoma "[would] only accept a call from the doctor's office to begin the process" and "[would] *not take information from the pharmacy*," *i.e.,* AllianceRx (R.41-13, A. App'x Vol. II at 3) (emphasis added). Dr. Hildebrand's office did not respond to this form. (*Id.*)

AllianceRx sought Dr. Hildebrand's help with preauthorization a second time on Tuesday, June 15. (R.41-9, A. App'x. Vol. I at 181, WALGREENS00003). Having still not received the preauthorization

from Dr. Hildebrand, AllianceRx called her office and spoke with a receptionist, who said she would work with a nurse on preauthorization. (R.41-10, A. App'x. Vol. I at 207, Cornwell Tr. at 56:6–25).

Dr. Hildebrand's office administrator returned AllianceRx's call later on June 15. (*Id.* at 57:1–17). Dr. Hildebrand's office administrator also attempted to submit the prior authorization online, but she did not know whether it was successful. (*Id.*) That same day, AllianceRx also informed J.J.S.'s mother via telephone that preauthorization was still needed. (R.41-9, A. App'x Vol. I at 181, WALGREENS00003; *see also* R.41-14, A. App'x Vol. II at 5–6, Carrington Tr. at 2:18–3:13). Ms. Scholl testified that during this call, she offered to pay for the prescription out of pocket and without relying on benefits (R.46-3, A. App'x Vol. III at 124, Scholl Tr. at 79:2–11), but AllianceRx has no record of this request. (R.41, A. App'x Vol. I at 74 (citing R.41-9, A. App'x Vol. I at 180–200)).

The next morning, June 16, AllianceRx contacted Dr. Hildebrand's office a third time, still seeking to obtain the essential preauthorization that only the doctor could initiate. (R.41-9, A. App'x Vol. I at 181, WALGREENS00003). AllianceRx also reached out to BCBS of Oklahoma that morning to verify that Dr. Hildebrand's office had *not* started the

8

preauthorization process. (R.41-15, A. App'x Vol. II at 14–16, BCBS_000572–74). And AllianceRx contacted Ms. Scholl again that day, leaving a voicemail to inform her that Dr. Hildebrand's office still had not initiated the preauthorization process. (R.41-9, A. App'x Vol. I at 181, WALGREENS00003; R.41-14, A. App'x Vol. II at 6, 11, 13, Carrington Tr. at 3:7–8, 8:5–12, 10:9–21).

Without preauthorization from Dr. Hildebrand after three attempts to obtain it, AllianceRx closed J.J.S.'s prescription file at 12:52 p.m. on June 16. (R.41-9, A. App'x Vol. I at 181, WALGREENS00003 (request to close entered at 10:51 a.m.); R.41-7, A. App'x Vol. I at 172, WALGREENS00026 ("no-go" approved on June 16, 2020); R.41-16, A. App'x Vol. II at 17, WALGREENS06715 (showing 12:52 p.m. approval of the "no-go" request)). AllianceRx did so consistent with its policy to close a prescription file after three unsuccessful attempts to obtain preauthorization. (R.41-6, A. App'x Vol. I at 169–70, WALGREENS00043–44; *see also* R.41-7, A. App'x Vol. I at 171–173, WALGREENS00025–27).

At no point throughout these events did AllianceRx represent, let alone promise, to Appellants that it would fill J.J.S.'s prescription or that

9

it would do so by a certain time. (R.46, A. App'x Vol. III at 10–11, Pls.' Prop. Facts ¶¶ 20–21, 23–27, 29, 31, 36).

### C.   Prior authorization is obtained and the prescription is filled: June 16, 2020 – July 20, 2020.

Later in the afternoon on June 16, Dr. Hildebrand's office received a preauthorization number from BCBS of Oklahoma. (R.41, A. App'x Vol. I at 65 (citing R.41-17, A. App'x Vol. II at 18–22)). While the parties dispute if and how this information was communicated to AllianceRx on the afternoon of June 16, there is no dispute that by this time, AllianceRx's file had been closed. Nor is there any evidence that in any communication, with either Dr. Hildebrand's office or Ms. Scholl, AllianceRx agreed, promised, or otherwise indicated to Appellants that it would fill J.J.S.'s prescription now that the prior authorization had been obtained. (*Compare* R.41, A. App'x Vol. I at 58–69 *with* R.46 at 5-19, A. App'x Vol. III at 7–21; *see also* Decision at 5 (noting that "[t]here is no evidence or testimony as to what Walgreens said when it received the preauthorization, nor is there any evidence indicating that Walgreens agreed, promised, or otherwise indicated it would begin the process of filling the prescription upon receipt of the preauthorization number on

June 16")). No further contact occurred between the parties until mid-July. (*Id.*) (neither side proffering facts showing any contact between the parties between June 16, 2020 and July 13, 2020).

On July 13, two days after J.J.S. underwent surgery to remove her appendix and some blood that had accumulated in her pelvic cavity, Dr. Hildebrand's office called AllianceRx to ask about J.J.S.'s prescription. (R.41-23, A. App'x Vol. II at 52; R.41-9, A. App'x Vol. I at 182, WALGREENS00004). AllianceRx explained that J.J.S.'s Lupron Depot prescription had been closed weeks earlier because AllianceRx had never received prior authorization from Dr. Hildebrand's office. (R.41-9, A. App'x Vol. I at 182, WALGREENS00004). Dr. Hildebrand's office responded that the preauthorization number was "updated," that J.J.S. had been hospitalized the prior week from July 8 to July 11, and that J.J.S. now needed the medication as soon as possible. (*Id.*; *see also* R.41-23, A. App'x Vol. II at 52). In response to this call, AllianceRx created a new fill request that day. (R.41-93, App. App'x Vol. I at 182, WALGREENS00004).

On Thursday, July 16, Dr. Hildebrand's office called AllianceRx to inform AllianceRx that J.J.S. needed the Lupron Depot urgently as she

had been re-hospitalized due to abdominal pain and vomiting. (R.41-24, A. App'x Vol. II at 54; R.41-9, A. App'x Vol. I at 182, WALGREENS00004). That same day, AllianceRx verified that the preauthorization had been approved by BCBS of Oklahoma and elevated the prescription request to 'stat' priority. (R.41-9, A. App'x Vol. I at 182, WALGREENS00004). AllianceRx obtained consent to ship J.J.S.'s Lupron Depot prescription the following day, July 17. (R.41-9, A. App'x Vol. I at 184, WALGREENS00006). The Lupron Depot was delivered to Dr. Hildebrand's office on Tuesday, July 21, where it was administered to J.J.S. that same day. (R.41-26, A. App'x Vol. II at 62, WALGREENS00046).

## III.  The district court proceedings

### A.  Appellants file suit, alleging a breach of the "duty of timeliness."

In their petition (which was never amended) Appellants alleged a single cause of action against AllianceRx: negligence. (R.2-1, Supp. App'x Vol. I at 22–23, Petition at ¶¶ 30–35). Appellants only alleged that AllianceRx breached an alleged duty to timely deliver the prescription for J.J.S.'s Lupron Depot shot. (*Id.* at ¶ 33 ("[AllianceRx's] actions and

inactions in failing to *timely deliver* the Lupron Depot shot constitute negligence and rise to the level of gross negligence.”)).[5]

## B. AllianceRx files for summary judgment on the basis that the duty Appellants alleged does not exist under Oklahoma law and was not voluntarily assumed.

In its motion for summary judgment, AllianceRx argued that Oklahoma law does not recognize an “express duty for a pharmacy to fill a prescription within a certain amount of time.” (R.41, A. App'x. Vol. I at 70). In support, AllianceRx argued, among other things, that the scope of a pharmacy's responsibilities (and, therefore, its legal duties) are set forth in the Oklahoma Pharmacy Act and related regulations and that those duties do not include a duty to fill a prescription within a set period of time. (*Id.* at R. 41, App'x at 70–71) (citing generally Okla. Admin. Code §§ 535:10-9-2 and 535:15-3-2).

Recognizing that duties are not only imposed as a matter of law, but can also be voluntarily assumed thorough conduct, AllianceRx further argued that even if it voluntarily assumed some duty to Appellants in connection with J.J.S.'s prescription, any such voluntarily

---

[5] The negligence claim does refer to a “promise” to deliver the Lupron Depot, but the sole claim stated in the petition is one for negligence.

13

assumed duty was satisfied and terminated on June 16, 2020. (*Id.* at 75 ("[A]ny duty that AllianceRx assumed to fill the Lupron Depot prescription in June 2020 terminated upon the closing of its file on June 16, 2020.")).

In response to AllianceRx's motion, Appellants focused primarily on the same *preexisting* legal duty alleged in their petition, specifically arguing that the alleged freestanding "duty of timeliness" existed irrespective of anything in the Oklahoma Pharmacy Act, and that AllianceRx could not evade that duty via its own policy or by unilaterally "abandoning" J.J.S. (R.46, A. App'x Vol. III at 22–25). Whereas the petition also referenced a "promise" by AllianceRx to fill the Lupron Depot prescription, Appellants' summary judgment response said nothing about that, and identified no *facts* showing any such representation by AllianceRx to Appellants at any time.[6] The summary judgment response also contained no argument that AllianceRx had *assumed* a duty to fill the prescription. Indeed, no version of the word

---

[6] At most, the summary judgment response pointed to generic public statements on an undated version of AllianceRx's website. (R.46, A. App'x Vol. III at 15–16, 20, 22). But again, there is no claim for fraud, misrepresentation, or breach of contract in this action.

"assume" even appears in Appellants' summary judgment response, with the exception of one instance quoting AllianceRx's motion in connection with a separate argument on causation. (*Id.* at 28).

Beyond this, Appellants' summary judgment response was high on rhetoric but light on legal analysis with respect to the dispositive question of duty. Appellants bemoaned that AllianceRx's so-called "no-go" policy was not disclosed to patients. (R.46 at 20, A. App'x. Vol. III at 22). Appellants argued that "keeping th[e policy] secret itself is a violation of a pharmacist's duty of care." (*Id.*) Appellants pushed for sweeping duties owed by "medical providers," physicians, and others to be extended to pharmacies. (R.46, A. App'x at Vol. III at 23–24). Finally, Appellants argued that AllianceRx had "abandoned" its "patient," that harm was foreseeable, that the evidence supported causation, and that factual disputes precluded summary judgment (R.46, A. App'x Vol. III at 24–28). In reply, AllianceRx refocused on the critical question of duty under the Pharmacy Act. (R.53, A. App'x Vol. IV at 87–88).

**C.    The district court held there is no basis for Appellants' alleged duty because Oklahoma law does not impose a duty to fill a prescription and AllianceRx did not assume one, either.**

The district court's analysis began with the threshold question for any negligence case: whether the alleged duty exists under Oklahoma law. (Decision at 7 ("The threshold question is this: Did [AllianceRx] have a duty to fill [J.J.S.'s] prescription for Lupron Depot?")). This went straight to the premise of the negligence claim as alleged: without a duty to fill a prescription at all, there can be no duty to do so "timely."

The district court first considered whether Oklahoma imposes a duty to fill a prescription as a matter of law. To answer this question, the court looked to the Oklahoma Pharmacy Act, Okla. Stat. tit. 59, §§ 353 *et seq.*, because "Oklahoma courts addressing the duties owed by pharmacists and pharmacies will generally begin by examining the plain language of these provisions." (*Id.*) Relying on the Oklahoma Pharmacy Act and related regulations, the district court concluded that the Pharmacy Act "suggests that dispensing medication is something that a pharmacist ***may*** do, rather than something she ***must*** do." (Decision at 8) (emphasis in original) (citing Okla. Stat. tit. 59, § 353.20.1(B); *id.* at

16

§ 353.20.2(A) & (C) and comparing these provisions with *id.* at § 354 (obliging a pharmacist's mandatory conduct)).

As part of its analysis, the district court concluded that a 2022 regulation which "clarified a pharmacist's right not to fill a valid prescription" applied retroactively to events in 2020 and further supported the district court's conclusion that Oklahoma does not impose an obligation on pharmacies to fill prescriptions. (Decision at 10) (citing Okla. Admin. Code. § 535:15-3-13(c)). The district court explained that "[t]his amendment expressly provided what was previously only implied: Oklahoma's comprehensive statutory and regulatory scheme does not impose a duty to fill prescriptions." (*Id.* at 10). In reaching this conclusion the district court rejected Appellants' arguments that two provisions of the administrative code connected to the Oklahoma Pharmacy Act support the duty to fill a prescription. (*Id.*)

Having held that Oklahoma law imposes no preexisting legal duty to fill a prescription, the district court then analyzed whether AllianceRx had assumed any duty to Appellants through its actions and found that it had not. (Decision at 12–16). The district court found no evidence indicating that AllianceRx had made any sort of representation to

17

Appellants that it would fulfill J.J.S.'s prescription for Lupron Depot between June 3 and June 16. (*Id.*) There was no evidence that AllianceRx had a contractual relationship with Appellants (*id.* at 13–14), no evidence to support a duty inferred from AllianceRx's conduct (*id.* at 14), and no evidence that AllianceRx agreed to fill J.J.S.'s prescription or otherwise agreed to begin providing pharmacy services upon receipt of the preauthorization between May 29 and June 16. (*Id.* at 15).

Finally, the district court rejected Appellants' arguments that AllianceRx owed additional duties beyond the sole duty alleged in their petition. (*Id.* at 16–18). The district court disagreed with Appellants' attempt to graft a physician's duties of care onto pharmacists "given the marked differences in the duties owed by those two categories of professionals and the circumstances under which they provide their respective services." (*Id.* at 16). The district court also rejected Appellants' attempt to argue for duties that were not alleged in their petition, like the newly proposed alleged duty to fully and accurately communicate AllianceRx's policies to Appellants. (*Id.* at 17–18).

The district court granted AllianceRx's summary judgment motion and entered judgment in its favor. This appeal followed.

18

## SUMMARY OF THE ARGUMENT

The district court correctly decided the dispositive question presented by the only claim that Appellants alleged: under Oklahoma law, AllianceRx did not owe J.J.S. a duty to fill her prescription *at all*, much less a duty to do so within a certain amount of time.

The district court first determined that Oklahoma law imposes no such duty. It correctly interpreted Oklahoma's statutory and regulatory framework to decide that pharmacies have no freestanding legal duty to fill a prescription as a matter of law.

The district court also correctly resolved the only other way AllianceRx could have ended up with the duty Appellants alleged: by assuming it. The court found that nothing in the record shows AllianceRx voluntarily assumed a duty to fill J.J.S.'s prescription. That conclusion is unsurprising, as (until now) Appellants themselves never argued otherwise. Rather, it was AllianceRx that argued—hypothetically, and in the alternative—that any duty it *may* have assumed was terminated on June 16, 2020. On appeal, Appellants mischaracterize that alternative argument as an *admission*, which they now argue the district court ignored. That position is not credible, nor is it relevant in light of the

district court's unchallenged factual finding that no evidence in the record supports an assumption theory in any event.

Appellants' remaining arguments are ancillary attacks on these two core conclusions. The disputes of fact they raise are not material because they do not go to the existence of a legal duty. And Appellants' arguments for duties other than the one alleged in their petition are too little, too late. The district court correctly interpreted Oklahoma's statutory and regulatory framework, as well as the record below. This Court should affirm.

## ARGUMENT

### I.    Standard of review

This Court reviews "a grant of summary judgment de novo and appl[ies] the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." *Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003) (citation omitted). "Under Rule 56(c), summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* "If there is no genuine issue of material fact, then the reviewing court must determine if the district court correctly applied the law." *Id.* (citation omitted).

An issue of fact is "material" only "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citation omitted). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (emphasis in original). "Thus, '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* (quoting *Anderson*, 477 U.S. at 247–48).

## II. The district court correctly held that the sole duty alleged in the petition—the duty to timely fill a prescription—does not exist under Oklahoma law and AllianceRx did not assume such a duty through its actions.

In their petition, Appellants alleged only that AllianceRx owed them a duty to fill a prescription in a timely manner. (R.2-1, Supp. App'x Vol. I at 22, Petition at ¶ 33). Although in their briefing Appellants now attempt to extend this to a duty to avoid emergencies (App. Br. at 23), to communicate material information (App. Br. at 2), and not to "abandon" a "patient" (*id.*), the sole duty alleged in the petition was one to "timely deliver" Lupron Depot to J.J.S. (R.2-1, Supp. App'x Vol. I at 22, ¶ 33). The district court understood this to encompass the question of whether a duty existed at all, correctly held that under Oklahoma law there is no duty for pharmacies to fill a prescription, and found no evidence that AllianceRx voluntarily assumed such a duty to Appellants. None of the purported errors set forth by Appellants warrants reversal.

**A.    The district court properly considered pharmacies' alleged duty to fill a prescription in the context of the only duty alleged by Appellants: a duty of timeliness.**

Given that Appellants alleged a duty to "timely deliver the Lupron Depot shot," the district court first had to decide whether AllianceRx had a duty to fill the prescription at all. This naturally follows: it defies logic to begin with deciding *how* a task must be completed without first deciding *whether* that task must be completed in the first place. Without a duty to fill a prescription at all, timeliness is irrelevant.

Starting the analysis here also solves a problem of Appellants' own making: they never explain what they mean by "timely" in the first place. Their collective filings entirely fail to elucidate what an alleged duty of "timeliness" would entail, how it would require a pharmacy to operate (particularly in the complex context of insurance adjudication), or what kind of "timeliness test" this Court could fashion for a factfinder to apply in a future case. Appellants' underdeveloped concept of "timeliness" all but *required* the district court to start by asking whether there is any duty to fill the prescription at all. In doing so, the district court took the proper first step towards evaluating (and correctly rejecting) Appellants'

sole basis for this lawsuit: a negligence claim premised on an alleged duty to fill prescriptions in a timely manner.

**B.     There is no duty for a pharmacy to fill a prescription under Oklahoma law.**

**1.     The district court appropriately looked to the Oklahoma Pharmacy Act to determine whether AllianceRx owed Appellants the alleged legal duty.**

When evaluating whether a duty exists under Oklahoma law, "the essential question [is] whether the plaintiff's interests are entitled to protection against the defendant's conduct." *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, 2010 OK 9, ¶ 21, 230 P.3d 869 (citations omitted). Oklahoma courts consider "policy factors" to answer this "essential question," including policies captured by statutes. *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 14 & n.4, 160 P.3d 959; *Wasson v. Shoffner*, 2006 OK CIV APP 151, ¶¶ 3–4, 9–12, 149 P.3d 1085 (relying on a right-of-way statute to interpret a motorist's common law duty).

Specifically in the context of pharmacies, Oklahoma courts look to the Pharmacy Act to assess the scope of defendants' legal duties. *See Pharmcare Oklahoma, Inc. v. State Health Care Auth.*, 2007 OK CIV APP 5, ¶ 28, 152 P.3d 267 ("Pharmcare is governed by the Oklahoma

Pharmacy Act . . . and the rules promulgated by the Oklahoma Board of Pharmacy"). This is because pharmacies' and pharmacists' duties are "clearly *defined* and *limited* under the Pharmacy Act." *Id.* at ¶ 30 (emphasis added).

*Carista v. Valuck* illustrates that the Pharmacy Act and rules promulgated by the Oklahoma Board of Pharmacy define the applicable duties. There, the plaintiff alleged numerous alleged breaches of duties, such as failure to "provide 'appropriate care including follow-up care'" and failure to "'properly monitor and assess [Decedent's] medications.'" *Carista v. Valuck*, 2016 OK CIV APP 66, ¶ 2, 394 P.3d 253 (alteration in original). In affirming the trial court's decision to dismiss the complaint, the Oklahoma Court of Appeals analyzed the Pharmacy Act and related regulations per *Pharmcare*'s framework, which is the "most comprehensive Oklahoma appellate court statement regarding these duties." *Id.* at ¶ 7. The *Carista* court ultimately held that the plaintiff's proposed "broad expansion to the duties of pharmacists" was "unsupported by existing Oklahoma state law or regulations" because it was unsupported by the Oklahoma Pharmacy Act, Oklahoma pharmacy

25

regulations, and the Drug Enforcement Administration's regulations for prescription drugs. *Id.* at ¶ 14.

Appellants argue that the district court misinterpreted *Carista*, but they are mistaken. (Appellants' Br. at 21). The *Carista* majority did not look to the common law to assess whether tort duties exist. The plaintiff herself invoked the Oklahoma Pharmacy Act and implementing regulations as the sources of the duties she alleged (*id.* at ¶¶ 9–12), and the decision referenced common law only in connection with a defense (the learned intermediary doctrine). *Id.* at ¶¶ 5–7. *Carista* reinforced *Pharmcare*'s holding that duty in this context is governed by the Pharmacy Act: it emphasized that among "the various Oklahoma cases that attempt to define the duties of a pharmacist," *Pharmcare* is "the most comprehensive Oklahoma appellate court statement regarding those duties," and it reiterated that under *Pharmcare* and Oklahoma law generally, "[a] pharmacist's duty . . . is clearly defined and limited under the Pharmacy Act." *Id.* at ¶ 7.

Judge Rapp's partial concurrence and partial dissent in *Carista* further underscores this conclusion. Judge Rapp's criticism was not that the majority opinion should not have looked to the Pharmacy Act as a

source of duty, but that the majority did not go far enough. Judge Rapp opined that the majority too narrowly interpreted the Act in holding that Subsection 37(e) only defined "what may be regulated and not what may be considered as a duty for tort law purposes" and instead should have treated that section as a "statutory statement of duty." *Id.* at ¶ 3–4 (Rapp, J., concurring in part and dissenting in part). Here the district court did not reach that question: it relied not on definitional sections of the Pharmacy Act, but on substantive sections that set forth the duties of pharmacies. (*See* § II.B.2, *infra*). In this way, it did just as an Oklahoma court would have done—and did, in both *Pharmcare* and *Carista.*

Further, Appellants misattribute *Pharmcare*'s holding to *Carista*; it is *Pharmcare*, not *Carista*, that lists one of a pharmacist's duties as "accurately filling and dispensing prescriptions." *Carista* merely quotes that decision. *Id.* at ¶ 7 (quoting *Pharmcare*, 2007 OK Civ App 5, ¶¶ 29–30). But this language does not help Appellants either way. No party disputes that a pharmacist has a duty to fill and dispense a prescription *accurately* in those cases where the prescription is in fact filled and dispensed, but the question here precedes that: whether there is a preexisting duty to fill a prescription in the first place. Neither

*Pharmcare* nor *Carista* holds that there is. And in any event, the district court correctly held that this point was clarified by Oklahoma regulations amended after both *Pharmcare* and *Carista* were decided. (Decision at 12) (citing Okla. Admin. Code. § 535:15-3-13(c)).

Appellants also argue that the district court erred by not considering foreseeability. (App. Br. 20-21). But "[f]oreseeability is just one of *many factors* that [an Oklahoma] [c]ourt considers" when weighing whether a common law duty exists. *Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, 2014 OK 106, ¶ 22, 341 P.3d 75 (emphasis added). Indeed, "creating a foreseeable risk of harm does not necessarily establish a duty of care under Oklahoma law." *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 627 (10th Cir. 2018).

The Pharmacy Act and related regulations set forth the duties that a pharmacy would foreseeably owe to a customer under the ordinary course. While "duty of care is not a concept that arises *only* by statute," *Wofford v. E. State. Hosp.*, 1990 OK 77, ¶ 10, 795 P.2d 516 (emphasis added), that does not mean statutes like the Pharmacy Act cannot define the duty of care that generally apply to pharmacies. *See Kolozsvari v. Doe*, 943 N.E.2d 823, 828 (Ind. Ct. App. 2011) ("While the provisions of

the Indiana Code and Board of Pharmacy regulations do not give rise to a statutory duty of care, the Indiana Supreme Court has held that specific circumstances may give rise to a pharmacist's duty to warn or withhold and that the Legislature's policy concerns, as expressed in the statutes governing pharmacies and pharmacists, are central to determining when such a duty arises."). Put differently, the Pharmacy Act embodies the common law duty of care generally applicable to pharmacies and reflects the Legislature's view of what the common law requires in this specific and heavily regulated context.

Here there was no reason for the district court to look beyond the Pharmacy Act for any duty; its decision to do so finds support in both *Carista* and *Pharmcare*. Cases such as *Cherokee Nation* are thus distinguishable because there the alleged facts implicated duties that fell outside the scope of the Pharmacy Act. *Cherokee Nation v. McKesson Corp.*, No. CIV-18-056-RAW, 2021 WL 1200093, at *8 (E.D. Okla. Mar. 29, 2021) (allegations regarding pharmacies' failure to combat the illegal diversion of prescription opiates to non-prescribed individuals). Here the district court correctly relied on Oklahoma's statutory framework to decide that no duty exists for a pharmacy to fill a prescription under

Oklahoma law because that issue is squarely addressed by the statutory framework and regulations implementing it.

*Kovaly* applied Texas law, not Oklahoma law, and is inapposite in any event. The case "turn[ed] on whether the district court abused its discretion" in excluding the plaintiff's expert. *Kovaly v. Wal-Mart Stores Texas, L.L.C.*, 627 F. App'x 288, 290 (5th Cir. 2015). That is not an issue here; no expert has been excluded. Further, the Fifth Circuit's ruling was not that duty of care always is "properly the subject of evidentiary combat" (*cf.* App. Br. 22), but only that a district court errs when it excludes an expert because it disagrees with the expert's conclusion rather than because the expert's methodology is unreliable. *Kovaly*, 627 F. App'x at 291 ("[T]he district court's reliance on the statutory and regulatory provisions was misplaced because resolving the state-law question is unnecessary to evaluate whether [the expert's] opinion is reliable."). Nothing like that occurred here; the district court here made no determination regarding the reliability of Appellants' experts.

**2. The district court correctly applied Oklahoma's legislative framework to find that no duty to fill a prescription exists under Oklahoma law.**

Not only was it correct to look to the Pharmacy Act and related regulations to determine whether a duty exists, but the district court also applied that law correctly. The Oklahoma Pharmacy Act generally uses permissive language when describing a pharmacist's bases for filling a prescription, as distinct from the mandatory language used elsewhere in the Act. *Compare* Okla. Stat. tit. 59, § 353.20.1(B); *id.* at § 353.20.2(A) & (C) (legislating that a pharmacist "may" fill a prescription when a symptom or purpose is not provided and that a pharmacist "may" dispense medicine without a prescription in limited circumstances) *with id.* at § 354 (requiring pharmacists to engage in other conduct). And critically, the Pharmacy Act contains no provision that obligates a pharmacy to fill a prescription; if it did, Appellants surely would have found it. This omission reflects the Legislature's intent that pharmacies in Oklahoma are not subject to this duty. *Darnell v. Chrysler Corp.*, 1984 OK 57, ¶ 5, 687 P.2d 132 ("Every provision of the Constitution and statutes of Oklahoma is presumed to have been intended for some useful

31

purpose . . . the Legislature expressed its intent in a statute and that it intended what it expressed.").

The Oklahoma State Board of Pharmacy's regulations also govern pharmacies and similarly contain no duty to fill a prescription. Though Oklahoma's pharmacy regulations impose several mandates on pharmacies and pharmacists alike, requiring a pharmacy to fill a prescription is not one of them. In fact, the administrative code cuts the other way: in 2022, the Oklahoma Pharmacy Board passed a new regulation clarifying that a "pharmacist maintains the right *not* to fill a valid prescription." *Id.* at § 535:15-3-13(c) (emphasis added).

Neither of the code provisions put forward by Appellants—Okla. Admin. Code § 535:10-3-1.1(6) or § 535:10-3-1.2(11)—creates a duty for a pharmacy to fill a prescription. (App. Br. 22–27). Section 535:10-3-1.1 addresses pharmacists generally,[7] and it does not create an obligation to fill a prescription—only one to maintain the patient's confidentiality in furtherance of a patient's health and safety:

---

[7] Without overstating the distinction between pharmacies (companies) and pharmacists (people), AllianceRx notes that Appellants have not brought a claim against any individual pharmacist.

> The health and safety of patients shall be a pharmacist's
> first consideration and the nature of their problems or
> ailments or any confidence entrusted to him in his
> professional capacity will not be divulged by the
> pharmacist except in response to legal requirements or
> in the best interest of the patron.

Tellingly, failure to fill a prescription is not identified as a violation of a pharmacist's professional conduct. Okla. Admin. Cod § 535:10-3-1.2.

Similarly, Okla Admin. Code § 535:10-3-1.2(11) describes violations of professional conduct by pharmacists, including when a pharmacist does not attempt to resolve a "situation of potential harm to the patient when [it was] apparent or should have been apparent to the pharmacist." *Id.* Again, that provision has no application here; Appellants simply do not allege (and have produced no facts to show) that they spoke to an AllianceRx pharmacist at all.

The district court correctly observed that the alleged duty of a pharmacy to fill a prescription appears nowhere in Oklahoma's statutes or regulations. The regulation most on point cuts against this duty, expressly preserving a pharmacist's right *not* to fill a prescription. Okla. Admin. Code. § 535:15-3-13(c). The district court's decision aligns with existing Oklahoma law that does not impose a duty to fill a prescription. This consistency with existing law is a pillar of Oklahoma statutory

interpretation that the district court followed and that this Court should respect as well. *Scott v. Foster*, 2023 OK 112, ¶ 17, 538 P.3d 1180. The district court applied its statutory analysis correctly when it held that pharmacies are not subject to a duty to fill prescriptions.[8]

> ### 3. Retroactivity was merely a supporting piece of the district court's analysis, but it was correct in any event.

While not essential to its holding, the district court correctly decided that Okla. Admin. Code. § 535:15-3-13(c) applies retroactively.

---

[8] Adopting Appellants' proposed duty would require pharmacies to fill each and every prescription without regard for professional judgment. This directly contravenes other courts' interpretations of a pharmacy's role, especially in the context of opiate prescriptions. Indeed, other courts have held that the Controlled Substances Act requires pharmacies to exercise professional judgment and *refuse* to fill suspicious prescriptions. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 477 F. Supp. 3d 613, 621-631 (N.D. Ohio 2020) (holding that the CSA requires pharmacies and pharmacists alike to prevent the diversion of illegitimate opiate prescriptions through pharmacists' individual professional judgment and systematic pharmacy-wide controls); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3917575, at *9 (N.D. Ohio Aug. 19, 2019) ("[T]he CSA . . . includes a duty not to ship suspicious orders"); *In re Nat'l Prescription Opiate Litig.*, 458 F. Supp. 3d 665, 700 (N.D. Ohio 2020) (accepting the allegation that pharmacies are "a first line of defense" against diverting prescription drugs improperly); *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 670-672 (N.D. Cal. 2020) (holding that pharmacies are subject to the CSA's penalty for knowingly filling illegitimate prescriptions).

34

*See* Okla. Admin. Code. § 535:15-3-13(c) ("The pharmacist maintains the right not to fill a valid prescription."). To be clear, the district court relied on *several* provisions of Oklahoma law to conclude that no general duty to fill a prescription exists; Section 535:15-3-13(c) was only one aspect of its reasoning. (*See* Decision at 8–11). Nonetheless, the district court correctly held that Okla. Admin. Code § 535:15-3-13(c) applies retroactively. (*See* Decision at 10 & n.14).

Amendments to statutes and regulations may be retroactive if they do not affect substantive rights. *Polymer Fabricating, Inc. v. Emps. Workers' Comp. Ass'n*, 1998 OK 113, ¶ 15, 980 P.2d 109. The *reason* for the statute's amendment affects retroactivity; the Oklahoma Legislature may intend either "(1) to change existing law or (2) to clarify ambiguous law" whenever it amends an existing piece of legislation. *Id.* at 307; *see also Haney v. State*, 1993 OK 41, ¶ 16, 850 P.2d 1087. Amendments that *clarify*, rather than change, a prior law apply retroactively. *Polymer*, 1998 OK 113, ¶ 15 ("Where an earlier legislative enactment is unclear in some respect and a later enactment attempts to remove the ambiguity, the amendatory statute constitutes a clarifying enactment that is to be given retrospective force.") (emphasis omitted).

35

The history surrounding the amendment to Okla. Admin. Code § 535:15-3-13(c) makes clear that it was a clarification. Indeed, it expressly states as much. On September 1, 2022, the Oklahoma Secretary of State and Office of Administrative Rules amended Oklahoma Regulation Section 535:15-3-13(c) *to clarify* the regulation, not to change it. *See* 39 Okla. Reg. 2057, OAR Docket #22-613 at "Gist/Analysis" ("The change in 353:15-3-13 (c) *clarifies* a pharmacist's right not to fill a valid prescription") (emphasis added). This leaves no doubt that Oklahoma Regulation Section 535:15-3-13(c) was amended to *clarify* a pharmacist's right, not to supplant it or affect substantive rights. Therefore, the district court appropriately applied Okla. Admin. Code § 535:15-3-13(c) retroactively.

**C.   The district court also correctly decided that AllianceRx did not voluntarily assume any duty to J.J.S.**

   **1.   Appellants misconstrue AllianceRx's conditional argument at the district court as a judicial admission.**

Appellants argue that AllianceRx "admitted that it owed a duty to fill prescriptions, and never denied that it owed a duty to J.J.S." (App. Br. at 13). This misstates the record.

Despite Appellants' insistence otherwise, AllianceRx did not concede a legal duty to J.J.S. Instead, it filed a motion for summary judgment primarily arguing that Oklahoma law imposes no such duty at all. (R.41, A. App'x. Vol. I at 69–72). In addition, and in the alternative, AllianceRx argued that "any duty" it *may* have assumed would not have accrued before July 13, 2020. (*See* R.41, A. App'x Vol. I at 72–78). Appellants' attempt to twist these statements into a "judicial admission" mischaracterizes AllianceRx's contingent statements. (App. Br. at 19). Appellants' argument fails for two reasons.

*First*, any "admission" of assumed duty would matter only if Appellants had alleged a separate claim for assumption by conduct—as distinct from the preexisting duty they did allege. But they did not. Their lawsuit raises one claim and one claim only—that AllianceRx owed J.J.S. a legal duty to timely fill a prescription. (R.2-1, Supp. App'x Vol. I at 22, Petition at ¶ 33). Voluntary assumption of duty is a stand-alone legal theory. *See Spencer v. Wal-Mart Stores, Inc.*, 203 F. App'x 193, 195 & n.2 (10th Cir. 2006) (finding no error when a lower court failed to analyze a voluntary-assumption-of-duty theory that was only raised in response to summary judgment because (i) voluntary assumption of duty is a stand-

37

alone legal theory that must be alleged independently and (ii) raising voluntary assumption of duty only in *response* to a motion was forfeiture). As such, Appellants cannot create a new voluntary-assumption claim for the first time on appeal. *See, e.g. Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f [a] theory simply wasn't raised before the district court, we usually hold it forfeited.").

*Second*, this Court has repeatedly recognized that judicial admissions stem from admitted *facts*, not from attorney argument. *See, e.g.*, *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1212 n.3 (10th Cir. 2017) ("Judicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute.") (citations and internal quotations omitted). Indeed, this Court has expressly held that alternative arguments are *not* judicial admissions. *See U.S. Energy Corp . v. Nukem, Inc.*, 400 F.3d 822, 833 & n.4 (10th Cir. 2005) ("[I]nconsistent statements made in the alternative are not formal, deliberate declarations that could reasonably by construed as judicial admissions.").

38

In short, AllianceRx offered an alternative argument, not a judicial admission, and then only relating to a legal theory Appellants never pleaded in any event. The Court should reject this claim of error.

> **2.    The district court correctly found the record does not show that AllianceRx voluntarily assumed a duty before July 13, 2020.**

The district court's conclusion that AllianceRx did not voluntarily assume a duty to Appellants before July 13, 2020 is supported by the record and the evidence (or, more accurately, the lack of evidence) therein. The district court found that Appellants "have not introduced evidence that, if true, could establish as a matter of Oklahoma law that [AllianceRx] undertook a duty to provide pharmacy services to J.[J.]S. on or before July 13, 2020 . . . ." (Decision at 15). In support of this finding, the district court relied on the following facts:

(1)    There was no evidence in the record that AllianceRx affirmatively agreed to fill the prescription (Decision at 14–15);

(2)    AllianceRx refused to accept cash for the prescription, directly contradicting any promise to fill the prescription (*id.* at 14 n.18);

(3)   AllianceRx *began* investigating the Scholls' benefits but *stopped* investigating benefits when "it concluded that it lacked the information necessary to proceed" (*id.* at 15);[9] and

(4)   AllianceRx "affirmatively represented that it would verify the preauthorization and begin filling the prescription" on July 13, 2020, but not before. (*Id.* at 15 (citing R.41, A. App'x. Vol. I at 67, Defs.' Prop. Facts ¶ 2) ("The AllianceRx representative noted that AllianceRx had not been notified the Prior Authorization had been approved, but they would verify the Prior Authorization and initiate the order.") (citing R.41-9, A. App'x. Vol. I at 182, WALGREENS 0004)).

These facts do not support a finding that AllianceRx assumed a duty to fill J.J.S.'s prescription.

*Harwood v. Ardagh Group* does not dictate otherwise. There, an employer instructed its employees to park in a lot it provided across a busy highway from the workplace. 2022 OK 51, ¶ 29, 522 P.3d 473, *as corrected* (Sept. 19, 2022). The employer explicitly represented to its employees that "it would make the passage across the highway as safe as possible, and it recognized the necessity for the protection of the employees crossing" as evidenced by physical infrastructure the employer put in place. *Id.* As a result, the court held the employer may have

---

[9]   Whereas Appellants insist that closing the file demonstrates *breach* of some duty owed to Appellants, the district court correctly relied on this fact to conclude that that no such duty existed in the first place.

assumed a duty to its employee who was struck by a car when walking back to the lot, and reversed the lower court's dismissal of the employee's claim for failure to state a claim. *Id.* at ¶¶ 5, 30–31. The court reached this conclusion because the allegations went "beyond those of merely *promising* an undertaking" of a duty, and included that the employer had previously undertaken steps to make the crossing safer, the employees relied on those steps, and the employer failed to take those steps on this particular occasion. *Id.* at ¶ 29.

Here, as the district court found, Appellants have not shown that AllianceRx "promis[ed] an undertaking" to fill J.J.S.'s prescription. Simply acknowledging the request of a physician to fill a prescription, without more, does not mean AllianceRx assumed a duty. And the fact that AllianceRx ultimately filled the prescription does not somehow reach back in time to establish a duty, either. Of course, not every voluntary act is evidence of a duty to do it.

Nor did any of the steps AllianceRx took result in it assuming a duty. While AllianceRx made efforts to contact J.J.S.'s physician to get the prior authorization, these acts were not representations made to Appellants. Other courts have recognized that a "pharmacy does not

41

voluntarily assume a duty by communicating with the prescribing physician." *DiVincenzo v. Molinaro*, No. FSTX08CV166028174S, 2022 WL 17102332, at *4 (Conn. Super. Ct. Nov. 2, 2022). Beyond those communications, Appellants do not identify any evidence of any acts AllianceRx took that establish it assumed a duty to J.J.S; Appellants' generalized vague assertions without support do not suffice.

## III. Appellants' remaining arguments are irrelevant to the central issue before this Court.

### A. The district court's rulings on duty were not *sua sponte* in any reversible sense.

Whether framed as a challenge to the district court's ruling on *preexisting* duty or its ruling on *assumed* duty, Appellants' characterization of the district court's ruling as *sua sponte* is belied by the record. While Appellants have compiled a laundry list of purported issues of which they contend they did not have notice (App.'s Br. at 14), all of these issues tie back to negligence—the very subject of AllianceRx's motion for summary judgment. (R.46, A. App'x Vol. III at 22–25). Appellants were certainly on notice of their obligation to put forth evidence of the sole cause of action they alleged in their own lawsuit.

The question of *preexisting* duty was front and center in the summary judgment briefing before the district court, going all the way back to Appellants' own framing of their petition. Appellants were given notice and an opportunity to address and present evidence on the issue. Indeed, Appellants' opening section of their summary judgment brief was all about duty and whether one existed. (*Id.*) Appellants even addressed Oklahoma's Administrative Code in the context of duty: "Defendants cite sections of the Oklahoma Administrative Code as if they limit a pharmacist or pharmacy's duty. These implied 'limits,' however, cannot be found in any of the cited provisions." (R.46, A. App'x Vol. III at 23).

In holding that a pharmacy has no duty to fill a prescription at all, the district court appropriately relied on arguments raised by the parties; its reliance on some *additional* reasoning was not improper. "A district court may grant summary judgment on a ground not formally raised in a summary judgment motion, 'so long as the losing party was on notice that she had to come forward with all of her evidence.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1170 (10th Cir. 2010) (quoting *Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 620 (10th Cir. 1992)). Only a party prejudiced by the lack of notice can obtain reversal; reversal is not

appropriate "simply because the grant of summary judgment came *sua sponte*." *Id.* (quoting *Ward v. Utah*, 398 F.3d 1239, 1245–46 (10th Cir. 2005)). Prejudice occurs only if a party is "'surprised by the district court's *action* and that surprise results in the party's failure to present evidence in support of its position." *Id.* (citation omitted) (emphasis added).

Nor were Appellants prejudiced. For the first time on appeal, they argue that they relied on AllianceRx's "judicial admissions" about assumption of duty, but there is no record support for this argument, and it is not clear what it means. If Appellants mean they believed they did not need to prove duty *at all* in light of AllianceRx's "admission," AllianceRx has explained why this mischaracterizes its alternative argument. Nor is it consistent with the fact that AllianceRx moved for summary judgment *on the very question of duty*, making opening arguments about both pre-existing and assumed duty. These arguments clearly put Appellants on notice of the need to offer evidence of both.

Further, and notably, Appellants do not identify any additional evidence on duty—regardless of how characterized—that they would have presented had they received the notice they contend they lacked. (*See* App. Br. at 14).

44

Contrary to Appellants' assertion, this case is nothing like *Safeway Stores 46 Inc. v. WY Plaza LC*, 65 F.4th 474 (10th Cir. 2023). There, the district court decided cross-motions for summary judgment based on the affirmative defense of laches—a defense that was raised in the pleadings but that neither party argued at summary judgment. *Id.* at 479. This Court reversed summary judgment because "[t]he district court didn't warn Safeway of the possibility of granting summary judgment to WY Plaza based on laches" and as a result of the defendant's reliance on "conclusory assertions, [the plaintiff] had no notice of the need to address new arguments appearing for the first time in the district court's ruling." *Id.* at 482. Those concerns are not present here.

Unlike in *Safeway*, the crux of the parties' briefing below raised precisely the question decided by the district court: whether AllianceRx owed the alleged duty to fill a prescription in a timely manner, either as a matter of law or as assumed. The question of duty was front and center, and AllianceRx's arguments on this point were far from conclusory. Appellants had every opportunity to address the question of duty; they simply disagree with the outcome. The district court's decision was not *sua sponte* in any reversible sense.

45

## B. The purported disputes of fact that Appellants raise are not material because they are not relevant to whether AllianceRx owed J.J.S. a legal duty.

"Disputes about immaterial facts will not preclude summary judgment." *See Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986) ("Failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). Any facts that go to elements of negligence that follow duty are not material because if a defendant does not "owe a duty of care to the plaintiff, there can be no liability for negligence as a matter of law." *Lowery*, 2007 OK 38, ¶ 12.

Appellants' "disputed" facts all suffer the same flaw: they are immaterial because they are offered to support other elements of negligence. For example, Appellants cite to conflicting expert opinions regarding "how a reasonably [sic] pharmacist would satisfy the standard of care" as a disputed fact that precluded summary judgment. (App. Br. at 17). But any such proffered testimony would relate to *breach* of the duty of care if it existed (it did not), not whether any duty existed in the first place. Facts regarding "[w]hether [AllianceRx] met the standard of

care," which Appellants argue is a "classic fact question for a jury" that precludes summary judgment, are immaterial for the same reason: they get at whether a duty was breached, not whether a duty existed at all. (*Id.* at 18). The "reasonableness" of any AllianceRx policies likewise go to breach, not duty. (*Id.* at 22). And causation is its own element to be proven, and then only if there was any duty to begin with (there was not) and the defendants breached that duty (they did not, but the district court did not reach this question in any event). (*Id.* at 18).

Finally, as a basis to reverse summary judgment, Appellants point to a factual dispute regarding whether Ms. Scholl offered to pay for the prescription out of pocket. (App. Br. at 7; 10). But this argument faces the same problem. At best, an allegedly missed opportunity to bypass preauthorization may support AllianceRx's *breach* of an alleged duty of timeliness *if* that duty existed. But it would not establish the existence of the duty. And this distinction is immaterial in any event because the district court made a factual finding *in Appellants' favor* when it decided that Ms. Scholl in fact made this request. (Decision at 14 n.18). Appellants cannot credibly argue that a fact found *in their favor* is the basis for reversing summary judgment. Simply put, Appellants' "material

47

facts in dispute" are not in fact material to the district court's decision or the existence of a duty because they all relate to elements that follow, not precede, a finding of a duty.

### C. Appellants' arguments for duties other than the one alleged in their complaint are misguided.

Appellants' reliance on duties separate and apart from the asserted duty of timeliness are beside the point and unrelated to Appellants' claim. For example, Appellants point to *Jackson v. Oklahoma Memorial Hospital*, 1995 OK 112, 909 P.2d 765 (Okla. 1995), *Sparks v. Hicks,* 1996 OK 20, 912 P.2d 331 (Okla. 1996), and Okla. Stat. tit. 59, §§ 353.20.l(B), 353.20.2(A); 353.20.2(C) as grounds for alternative duties "to dispense medications lawfully prescribed" (App. Br. at 23), "to exercise professional judgment responsibly" (*id.*), to "provid[e] emergency supplies when appropriate" (*id.*), not to "abandon a patient" (*id.* at 26) and to "continue care." (*Id.*) None of these citations disturbs the district court's holding that Oklahoma does not recognize the Appellants' alleged duty of timeliness.

In *Jackson*, the Supreme Court of Oklahoma held that "a physician is generally under the duty to give a patient all necessary and continued

48

attention so long as the case requires it." *Jackson*, 1995 OK 112, ¶ 18. Similarly, *Sparks* recognized a cause of action by a patient against *a physician* for abandonment. *Sparks*, 1996 OK 20, ¶ 11.

Relying on these cases runs afoul of a key distinction in Oklahoma law: pharmacists are *not* physicians. *See Carista*, 2016 OK CIV APP 66, ¶ 13 (limiting pharmacists' duties to second-guess prescriptions for fear that pharmacists would otherwise "act[ ] as a form of [a] second medical opinion, [which] certainly could enmesh pharmacists in the practice of medicine.") (citing Okla. Admin. Code. § 535:15-3-1.1(7) ("A pharmacist will refrain from any attempt at diagnosis or treatment that might infringe upon the legally constituted right or obligation of any practitioner of the healing arts.")). Appellants do not address how *Jackson* or *Sparks* nonetheless apply to pharmacists, especially in light of *Carista*'s clear distinction between the two professions.

Oklahoma Stat. tit. 59, § 353.20.1(B) refers to how a pharmacist must label medication but it has nothing to do with care in a purported emergency. Likewise, Okla. Stat. tit. 59, § 353.20.2(A) allows a pharmacist to exercise his or her judgment for filling certain *quantities* of medication and does not mention emergencies. Section (C), though

closer, still does not stand for the proposition that Appellants posit; it states that "[a] pharmacist *may* [NB: not *must*] dispense without a prescription . . . devices or medication as medically necessary to prevent the death of or serious harm to the health of a patient" under certain conditions.

Appellants do not demonstrate how an individual pharmacist's ability or even obligation to assess a presenting patient in an alleged emergency thrusts a duty upon an entire pharmacy, much less how and when this kind of duty would arise. This Court need not do so for them. *See Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) ("Our system of justice, after all, is not a self-directed inquisitorial one; to avoid error, we are dependent on the full development of issues through the adversarial process and the initial testing of ideas in trial courts . . . ."); *see also Brooks v. Mentor Worldwide, LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021). Appellants wholly fail to support their argument that AllianceRx owed some kind of duty to ameliorate an emergency or any other duty that was never alleged below.

## CONCLUSION

The district court correctly found that AllianceRx did not owe Appellants the only duty they alleged: a duty to timely fill a prescription. The district court correctly deduced that a duty to fill a prescription at all must first be found before there could be any duty to do so in a timely manner. The court then applied the appropriate legal framework and drew fair conclusions from the record to correctly decide that Oklahoma law imposes no preexisting legal duty for pharmacies to fill prescriptions, nor did AllianceRx assume a duty to do so in this case.

In reaching those conclusions on summary judgment, the district court did not inappropriately resolve material factual disputes, nor was its decision otherwise erroneous or prejudicial. This Court should affirm.

## STATEMENT REGARDING ORAL ARGUMENT

AllianceRx believes this appeal can be resolved without oral argument, as the issues presented are not complex and their resolution requires only a straightforward application of Oklahoma law. However, AllianceRx would welcome the opportunity to participate in oral argument if further discussion would be helpful to the Court.

Respectfully submitted,

*/s/ James E. Goldschmidt*

James E. Goldschmidt
Nathan J. Oesch
Ellen E. Anderson
QUARLES & BRADY LLP
411 E. Wisconsin Ave., Ste. 2400
Milwaukee, WI 53202
(414) 277-5000
james.goldschmidt@quarles.com
nathan.oesch@quarles.com
ellen.anderson@quarles.com

Stacy A. Alexejun
QUARLES & BRADY LLP
33 E. Main St., Ste. 900
Madison, WI 53703
(608) 251-5000
stacy.alexejun@quarles.com

*Attorneys for Appellees Walgreens Specialty Pharmacy, LLC d/b/a AllianceRx Walgreens Prime and Walgreens Specialty Pharmacy Holdings, LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(B), this brief contains 11,030 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 10th Cir. R. 32(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: August 13, 2025

*/s/ James E. Goldschmidt*
James E. Goldschmidt
Nathan J. Oesch
Ellen E. Anderson
QUARLES & BRADY LLP
411 E. Wisconsin Ave., Ste. 2400
Milwaukee, WI 53202
(414) 277-5000
james.goldschmidt@quarles.com
nathan.oesch@quarles.com
ellen.anderson@quarles.com

Stacy A. Alexejun
QUARLES & BRADY LLP
33 E. Main St., Ste. 900
Madison, WI 53703
(608) 251-5000
stacy.alexejun@quarles.com

*Attorneys for Appellees Walgreens Specialty Pharmacy, LLC d/b/a AllianceRx Walgreens Prime and Walgreens Specialty Pharmacy Holdings, LLC*

## CERTIFICATE OF SERVICE

I, James E. Goldschmidt, hereby certify that on August 13, 2025, I served a copy of the foregoing Opening Brief of Appellees Walgreens Specialty Pharmacy, LLC d/b/a AllianceRx Walgreens Prime and Walgreens Specialty Pharmacy Holdings, LLC via ECF on:

Andrew C. Jayne
Jason A. McVicker
Bryan J. Seaton
JAYNE PETERS MCVICKER BURKE ASKEW & PARKER
401 S. Boston, Ste. 2000
Tulsa, OK 74103
(918) 938-7944
ajayne@jpmlawgroup.com
jmcvicerk@jpmlawgroup.com
bseaton@jpmlawgroup.com

*Attorneys for Appellants Eric F. Scholl and Jacqueline R. Scholl, individually and as parents and next friends to J.J.S., a minor child; and J.J.S., a minor child*

Dated: August 13, 2025

/s/ James E. Goldschmidt
James E. Goldschmidt
Nathan J. Oesch
Ellen E. Anderson
QUARLES & BRADY LLP
411 E. Wisconsin Ave., Ste. 2400
Milwaukee, WI 53202
(414) 277-5000
james.goldschmidt@quarles.com
nathan.oesch@quarles.com
ellen.anderson@quarles.com

Stacy A. Alexejun
QUARLES & BRADY LLP
33 E. Main St., Ste. 900
Madison, WI 53703
(608) 251-5000
stacy.alexejun@quarles.com

*Attorneys for Appellees Walgreens Specialty Pharmacy, LLC d/b/a AllianceRx Walgreens Prime and Walgreens Specialty Pharmacy Holdings, LLC*